1  **PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
    *Counsel of Record*
2  **BILL MORROW, ESQ.  C.S.B.  #140772**
    LEPISCOPO & MORROW, LLP
3  2635 Camino del Rio South, Suite 109
    San Diego, California 92108
4  Telephone:  (619) 299-5343
    Facsimile:  (619) 299-4767

5  *Lead* Attorneys for Plaintiff, **GUATAY CHRISTIAN FELLOWSHIP**

6

7  **DEAN R. BROYLES, ESQ. C.S.B. #179535**
    **JAMES M. GRIFFITHS, ESQ.   C.S.B. # 228467**
8  THE WESTERN CENTER FOR LAW & POLICY
    539 West Grand Avenue
9  Escondido, California 92025
    Telephone: (760) 747-4549; Facsimile: (760) 747-4505
10
    Attorneys for Plaintiff, **GUATAY CHRISTIAN FELLOWSHIP**
11

12
                    **UNITED STATES DISTRICT COURT**
13
                    **SOUTHERN DISTRICT OF CALIFORNIA**
14

15 | **GUATAY CHRISTIAN FELLOWSHIP,** ) Case No. **08-CV-01406-JM-CAB**
                                       )
16 |      Plaintiff,                    ) **DECLARATION OF MIKE STEVENS IN**
                                       ) **SUPPORT OF GUATAY CHRISTIAN**
17 |                                    ) **FELLOWSHIP'S MOTION FOR**
                                       ) **PRELIMINARY INJUNCTION**
18 |                                    )
      v.                                )
19 |                                    ) **[F.R.Civ.P. Rule 65]**
                                       )
20 |                                    )     DATE: **September 25, 2008**
    **COUNTY OF SAN DIEGO**,            )     TIME: **3:30 p.m.**
21 |                                    ) COURTROOM: **16**
          Defendant.                    )
22 |                                    ) COURTROOM: **16**
                                       )     JUDGE: **HON. JEFFREY T. MILLER**
23 |                                    ) TRIAL  DATE: None set

24 _____

25      I, **MIKE STEVENS**, hereby declare and state as follows:

26

27

28 _____
   **DECLARATION OF MIKE STEVENS IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S
   MOTION FOR PRELIMINARY INJUNCTION**

                                      -1-

**1.** I am the President of Stevens Planning Group, Inc. and I am not a party to this action. I am over the age of eighteen and have personal knowledge of the herein stated matters, and, if called upon as a witness, could and would testify competently and accurately to the herein stated matters.

**2.** A true and correct copy of my most recent resume is filed as Exhibit 22.

**3.** My educational background can be summarized as follows: University of Missouri—BA in Political Science with honors (1973); United States International University—MS in Urban Studies; Fellowship in the U.S. Department of Health, Education, and Welfare (participated in Community Environmental Project—focused on land use planning and environmental issues); continuing education course at University of California, Riverside, and University of Nevada, Las Vegas—planning law, general plan preparation, site design, and cost estimating.

**4.** I have the following certifications and professional licenses: California Real Estate License; County of San Diego Certified Environmental Consultant.

**5.** I am involved in associations, organizations, and committees and have served on the following boards: appointee to the County of San Diego Health Services Department Advisory Board (land use and environmental programs); elected member of the City of San Diego's Peninsula Community Planning Board; delegate to the North Bay Redevelopment Project Advisory Committee (served as Chair for two years); Board Member of California Association of Subdivision Consultants; Board Member of Lindbergh Field Master Plan Citizens Committee; Member of North Bay and Beach Area Transit Committee; appointee to Naval Training Center Reuse Plan Advisory Committee; and Member of American Planning Association.

**DECLARATION OF MIKE STEVENS IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

**6.**     For more than 25 years I have designed and managed multidisciplinary land use projects as a professional planner in the public and private sectors. Stevens Planning Group, Inc. was incorporated in 1984 and emphasizes a sound basis for land development design coupled with a clear understanding of all governmental regulations and environmental sensitivities.

**7.**     I have assisted land use attorneys, municipalities, and special districts with expert testimony, research, and graphics for trial.

**8.**     Highlights of my professional career include the following.

**9.**     I was employed in San Diego County Planning Department from 1975 to 1980; from 1980 to 1983 I worked for Rick Engineering Company as a project manager/designer.

**10.**     During my tenure with the County I presented staff reports and advising the San Diego County Planning Commission and San Diego County Board of Supervisors on issues relating to code and ordinance provisions, design solutions, and conditions of approval. I was the managing planner for a comprehensive revision to the San Dieguito Community Plan to implement the Regional Growth Management Plan ("San Dieguito Project"). The San Dieguito Project was extensive from a land use perspective, requiring over 400 land use category changes. In regulatory planning I had responsibility for major project design review, codes conformance, utility and service assurances, and staff reports.

**11.**     For example, I have also been the project planner on the following projects: Lawrence Welk's Country Club Village; Pala Mesa Country Club Resort; Rancho San Diego (Newton) rezone and employment center; Cottonwood Village; San Elijo Sewage Treatment Plant expansion; Alpine Highlands Specific Plan; Rancho Jamul Estates, and Monte Vista Borrow Pit.

**DECLARATION OF MIKE STEVENS IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-3-

**12.** In January 1983 I formed Michael D. Stevens and Associates, which in December 1984 was reorganized to a corporation, Stevens Planning Group, Inc.

**13.** In my duties as president of Stevens Planning Group, I manage and participate in all of the firm's land planning consulting services, which include project design, management of multi-discipline submittals, financial/feasibility analysis, and environmental impact reports. Stevens Planning Group also provides

**14.** Stevens Planning Group has successfully planned and participated in more than 400 projects, including for example: Big Country Ranch (large estate community); East County Square (mixed-use large-box retail and residential with habitat community), Oak Creek Recreational Vehicle Park; Radio Q AM (radio station); Alta Del Mar (coastal bluffs single-family home community); Warren-Walker School (private); Mission Bay Montessori School; National University (campus plan); Las Brias Pacificas (planned mobilehome community); Stallion Oaks Ranch (destination resort); Encinitas Ranch Golf Course; and Vallecito Specific Plan (mixed-use resort/commercial project with clean fueled transit system to Yosemite National Park.

**15.** Stevens Planning Group also provides final plan and map processing services such as: easement preparation, agreement negotiations, subcontractor administration, work program management, and cost scheduling.

**16.** In providing the opinions set forth in this declaration I have reviewed the following documents, true and correct copies of which are filed as the following exhibit numbers:

Exhibit 23:  Notice of Approval of Major Use Permit No. P71-104  (March 26, 1971)

Exhibit 24:  Modification of Major Use Permit No. P71-104W (February 2, 1979)

**DECLARATION OF MIKE STEVENS IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-4-

Exhibit 25:  Modification of Major Use Permit No. P71-104W$_2$ (July 16, 1982)

Exhibit 26:  Notice of Approval of Major Use Permit No. P71-104W$_2$ (August 20, 1982)

Exhibit 27:  Plot Plan for MUP No. P71-104 (Approved: September 20, 1978)

Exhibit 28:  Plot Map for MUP No. P71-104 (Approved: September 20, 1978)

Exhibit 29:  Plot Plan for MUP No. P71-104 (Approved: February 2, 1979)

Exhibit 30:  Plot Map for MUP No. P71-104 (Approved: February 2, 1979)

**17.**   In addition, in providing the opinions set forth in this declaration I have reviewed, considered, and relied upon the following California and San Diego County Building and Zoning Codes (true and copies of which are filed collectively as Exhibit 35):

Exhibit 35, p1: S.D. County Zoning Ordinance (SDCZO) Article XXVII-A "LC LIMITED CONTROL ZONE", Section 451   (Amd. Ord. 3588 (NS) 7-14-70);

Exhibit 35, p. 1: SDCZO Article XXXIII "GENERAL PROCEDURE PROVISIONS" Section 801. Application for Variance or Special Use Permit (Amd. Ord. 3420 (NS) 9-29-69);

Exhibit 35, p. 2:  SDCZO Section 2875 "Uses Subject to a Major use Permit. (in the S87 Limited Control Use Regulation (Zone))" (Amd. Ord. 5508 (N.S.) 5-16-79);

Exhibit 35, pp. 3-5: SDCZO Section 6400 et seq, "Resort Services, Recreational Vehicle Park Regulations" (Amd. Ord. 5976 (N.S.) 1-28-81);

Exhibit 35, p. 6: SDCZO Section 7378 "Application for Modification of a Use Permit"  (Amd. Ord. 7048 (N.S.) 10-09-85).

**18.**   As an initial matter it is worth while to provide historical context.

**DECLARATION OF MIKE STEVENS IN <u>SUPPORT</u> OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-5-

**19.**   The 1971 special use permit in this case was adopted within about 10 years of the first effort to zone and regulate land uses in the rural back country area of San Diego County. Zoning in this area was called "LIMITED CONTROL" (LC)  and the Zoning Ordinance in these areas provided that the County could approve any and all uses that were not specifically stated in the underlying zone by issuing a special use permit.  (See Exh. 35, p. 1: TZO Sect. 451.3.)  The County's 1979 approval of P71-104W carried forward the permissive framework or regulating this property under new ZO Section 2875 (Exh. 35, p. 2) under which "*all other Use Types are permitted by the S87 (Limited Control) Use Regulations upon issuance of a Major Use Permit*".  By 1982 in approving P71-104W2 the County had begun calling the project a "recreational campground" but the County declined to impose the more rigid standards of ZO Section 6400, *et seq*. (Exh. 35, pp. 3-5), titled "Resort Services, Recreational Vehicle Park Regulations.

My review of the documents regarding this property demonstrate that the County obtained (from the project proponent) beneficial public health improvements, such as regulation of septic sewer and potable water systems, a fire protection plan, protection of natural water courses, and limitation on operations that would protect the quiet enjoyment of neighboring properties (e.g., noise, light glare, landscape maintenance, etc.). The County also secured and completed desired expansion of public road right of way, physical road improvements, including roadside drainage and bikeway improvements, and even a covenant agreeing to perform future road improvements plus security provisions. The benefits to the community and to local planning efforts were further memorialized in the required approval findings and the facts supporting them, such as "development of this site as a recreational campground will effectively prevent future undesirable expansion of strip commercial development."

**DECLARATION OF MIKE STEVENS IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-6-

**20.** Based upon my reviewed of the documents (Exhs. 23-30), review of California and San Diego County Building Codes, review of San Diego County regulations in effect at the time the permit and use modifications were approved, and my knowledge and experience in handling issues and projects relating to land use, and am providing separate but related opinions with respect to the allowance of a religious assembly use in conjunction with the Major Use Permit #P71-104W and all modifications thereto (see Exhs. 23-26).

**21.** First, use of the Recreation Center as a church for religious assembly and religious worship was fully acknowledged and approved in 1978 as set forth in the 1978 Plot Plan and Plot Map (Exhs. 27 and 28) and 1979 Plot Plan and Plot Map (Exhs. 29 and 30). Specifically, in the 1978 and 1979 Plot Maps and Plot Plans the church is identified as follows: "***EXIST. BLDG. (CHURCH)***." (See Exhs. 27, 28, 29, and 30; emphasis added.) In this grant of use there were no restrictions attached. In this regard, it is my opinion that from the outset the Recreation Center was clearly permitted to be utilized as church for religious assembly and religious worship. (Exhs. 27-30.)

**22.** Second, in addition to the fact that the County had approved the building as a church (which already existed) as early as 1978, the County acknowledged and further approved this use in 1988. Specifically, in 1988 the County Health Department received written concurrence from the Department of Planning and Land Use ("DPLU") in the conclusions reached by County's Department of Environmental Health ("DEH"), which were reflected in the November 30, 1988 letter (Exh. 1) that contained the statement "*existing wells and reservoir are adequate for current domestic needs **which include the use of the recreation building for a 200 person church…***"

---

**DECLARATION OF MIKE STEVENS IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-7-

It is clear that DEH sent the 11/30/88 letter (Exh. 1) approving religious assembly and religious worship in the recreation building to Benjamin F. Grame, Jr., the Deputy who signed the notice of approval of the second modification, P71-104W2, on behalf of DPLU. Ben Grame was known as an extremely thorough senior planner/section chief who, in my opinion, would not have hesitated to disagree with DEH if there were any deficiencies in the DEH letter.

It is also germane to my opinion that the recreation hall structure, in which occasional religious service were held, was approved for continuous public uses, i.e., a tavern/bar with live music, dancing, other non-specified forms of live and other forms of entertainment having little or nothing to do with the typical operation of the recreational camping park. Ben Grame was the chief County planner in charge of a team that revised all zoning codes for the County at that time. In 1971, the original "special" use permit was granted under then Section 451.3 for a recreational campground in what was then, I believe, the LC ("Limited Control") zone. At that time, anything could be approved by special use permit and it was not uncommon for the County to approve religious retreat campgrounds in that area (e.g., Unity Retreat in nearby Descanso).

**23.** Third, a "church" or religious assembly and worship are allowed as a primary use pursuant to issuance of a special use permit (later major use permit) since the first adoption of zoning in the County, which occurred during the 1960's. The first two versions of the special use permit approved in 1978 and 1979 indicated by label on the plot plan that the recreation hall was also approved as a "Church" (see Exhs. 27-30). Furthermore, Condition "F" (pertaining to amplified sound) in the original 1971 permit (Exh. 23) was superseded in the first modification on 2/2/79 (Exh. 24) by Condition "C." This condition made an exception to the amplified sound limitation, which reads "*except for an **electric bell or chime system** which may be sounded between 9:00 am and sunset one day per week and on **religious** holidays.*" (Exh. 24, p. 3, ¶C.)

Even though the "church" label was dropped in 1982, the church-bell condition clearly remained in the permit as Condition C (see Exh. 24): "*All conditions of the Major Use permit P71-104 and previous modification P71-104W shall be complied with.*" (Exh. 25, p. 3, ¶C.)

Also in conjunction with the 1982 expansion of the recreation hall, the County made specific findings that the nature of the property had changed into a joint use public/private facility with adoption of Finding (a-1) as follows: "*The building is already existing and used for recreational purposes. Alteration of the building to allow joint use by the community and recreational campground would not effect (sic.) the above.*" (Exh. 25, p. 3, ¶a.1.) This refers to the mandatory finding required by County Zoning Ordinance Section 7358, which reads: "*The location, size, design and operating characteristics of the proposed use will be compatible with and will not adversely affect or be materially detrimental to adjacent uses, residents, buildings, structures, or natural resources . . .*"

It is not possible for the County to name and regulate all uses that can take place within a recreation building, such as arts and crafts, banquets, town meetings, polling location for election, etc. However, in this case the last modification of the major permit gave clear guidance as to how uses in this building can operate without further regulation. It is conspicuous that none of the customary operating conditions were imposed in conjunction with the allowance in 1982 to convert the existing recreation hall to a facility with public beer and wine sales plus live music and entertainment. In other words no limits were set on hours of operation, numbers of patrons, etc. beyond those already included in the 1971 and 1979 permit approvals, which included standard limitation on amplified music being heard beyond site boundaries.

It is very clear that incidental religious assembly within these operating controls would be less intensive and cause less impact to a community than a public tavern with live music and entertainment. Stated differently, the use of the recreation center for religious assembly and worship is a lesser included use—that is, since the recreation center existed and was in use at the time the original Plot Plan and Maps were approved in 1978 and 1979 (Exhs. 27-30), use as a place for religious assembly and worship is clearly included. This is further supported by the fact

that in the County's 11/30/88 letter (Exh. 1) clearly acknowledge Guatay Christian Fellowship's use of the recreation center for religious assembly and religious worship.

Finally, it should also go without saying that bars of this kind in remote areas are much more high intensive use as they create far more demand on normal law enforcement services, public utilities, public health facilities, and even emergency services than would normal operation of a religious assembly use.

**24.** Fourth, my final opinion relates to an area more commonly known as the "*grandfathered right*" or previously conforming use right, i.e., to be regulated under codes that applied earlier (provided a particular use was lawfully established in accordance with all then-applicable laws). It is my opinion that the church was lawfully established in 1971, its recognition was restated in 1979, and its continued use was allowed even after 1982 as one of several "community" oriented uses that could remain or be added to the recreation building. This is especially true since the County reaffirmed this in its November 30, 1988 letter (Exh. 1), wherein it stated that the recreation center's use as a 200 member church was authorized.

**25.** Based on all of the foregoing, it is clear that a lawful use of the recreation center since at least 1978 (Exhs. 27-28), including the entire 22-year time-frame of Guatay Christian Fellowship's use (1986-2008), necessarily includes religious assembly and religious worship.

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed on this **28th** day of **August**, 200**8**, at San Diego, California.

_____
**MIKE STEVENS**

---

**DECLARATION OF MIKE STEVENS IN <u>SUPPORT</u> OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

**CASE NAME:** *GUATAY CHRISTIAN FELLOWSHIP v. COUNTY OF SAN DIEGO*

**CASE NO.: 08-CV-01406-JM-CAB**

### CERTIFICATE OF PERSONAL SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO:

I am over the age of eighteen years, and not party to this action. My business address is **2635 Camino del Rio South, Suite 109, San Diego, California 92108**.

I, the undersigned, declare under the penalty of perjury that I served the below name person(s) the following documents:

1. **DECLARATION OF MIKE STEVENS IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

in the following manner:

By **personal** service by delivery to **ABC ATTORNEY SERVICES, INC.** for personal service on **August 29, 2008** to the following person(s):

| | |
|---|---|
| **THOMAS D. BUNTON, ESQ.** | **Attorneys for County of San Diego** |
| SENIOR DEPUTY COUNTY COUNSEL | |
| County of San Diego | |
| County Administration Center | |
| 1600 Pacific Highway, Room 355 | |
| San Diego, California 92101-2469 | |

I certify and declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on this **29TH** day of **August, 2008**.

                                                        **/s/ Peter D. Lepiscopo**
                                                          Peter D. Lepiscopo, Esq.

---

**DECLARATION OF MIKE STEVENS IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**