1 **PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
   *Counsel of Record*
2 **BILL MORROW, ESQ.  C.S.B.  #140772**
   LEPISCOPO & MORROW, LLP
3 2635 Camino del Rio South, Suite 109
   San Diego, California 92108
4 Telephone:  (619) 299-5343
   Facsimile:  (619) 299-4767

5 *Lead* Attorneys for Plaintiff, **GUATAY CHRISTIAN FELLOWSHIP**

6
7 **DEAN R. BROYLES, ESQ. C.S.B. #179535**
   **JAMES M. GRIFFITHS, ESQ.   C.S.B. # 228467**
8 THE WESTERN CENTER FOR LAW & POLICY
   539 West Grand Avenue
9 Escondido, California 92025
   Telephone: (760) 747-4549; Facsimile: (760) 747-4505
10
11 Attorneys for Plaintiff, **GUATAY CHRISTIAN FELLOWSHIP**

12
13                    **UNITED STATES DISTRICT COURT**
14                    **SOUTHERN DISTRICT OF CALIFORNIA**

15 **GUATAY CHRISTIAN FELLOWSHIP**,      )  Case No. **08-CV-01406-JM-CAB**
                                          )
16         Plaintiff,                     )
                                          )  **DECLARATION OF PASTOR STAN**
17                                        )  **PETERSON IN SUPPORT OF GUATAY**
                                          )  **CHRISTIAN FELLOWSHIP'S MOTION FOR**
18                                        )  **PRELIMINARY INJUNCTION**
           v.                             )
19                                        )
                                          )  **[F.R.Civ.P. Rule 65]**
20 **COUNTY OF SAN DIEGO**,               )
                                          )      DATE: **September 25, 2008**
21                                        )      TIME: **3:30 p.m.**
           Defendant.                     )  COURTROOM: **16**
22                                        )
                                          )
23                                        )  COURTROOM: **16**
                                          )      JUDGE: **HON. JEFFREY T. MILLER**
24 _____)  TRIAL DATE: None set

25
26         I, **STAN PETERSON**, hereby declare and state as follows:

27
   _____
28 **DECLARATION OF PASTOR STAN PETERSON IN SUPPORT OF GUATAY CHRISTIAN**
   **FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

                                         -1-

1. I am the Senior Pastor of plaintiff, Guatay Christian Fellowship, and have held that position since the church was established in February of 1986. I am over the age of eighteen and have personal knowledge of the herein stated matters, and, if called upon as a witness, could and would testify competently and accurately to the herein stated matters.

2. Plaintiff, **GUATAY CHRISTIAN FELLOWSHIP** (hereinafter called "the CHURCH"), is a not-for-profit corporation, which is organized and existing under the laws of the State of California and which enjoys I.R.C. §501(c)(3) status.

3. The CHURCH was founded in February of 1986 by me and my wife, Brenda Peterson. Initially, the CHURCH held religious assemblies and services in our home.

4. Since its inception, the CHURCH'S membership has fluctuated between 50 to 100 members.

5. The CHURCH'S members have sincerely held beliefs that Jesus Christ commands them to, among other things, proclaim the Gospel, make disciples, and aid the poor. They practice their beliefs by providing a place for religious assembly, opportunities for worship, religious instruction, and activities for people of all ages. They also perform charitable services for the underprivileged.

6. After its establishment in our home, the CHURCH quickly grew and needed to move to a new location in order to accommodate its membership and religious services.

7. The CHURCH selected an excellent facility for its new location—the Recreation Center of the Pine Valley Trailer Park (the "Park"), located at 27521 Old Highway 80, Guatay, California 91931. The CHURCH rents the Recreation Center from the Park.

8. On October 5, 1986, the CHURCH held its first service in its present location—the Recreation Center. The CHURCH holds weekly services at 10:00 a.m. on Sundays and 7:00 p.m. on Wednesday evenings.

9. On or before November of 1988, the COUNTY recognized the CHURCH and authorized the CHURCH'S use of the Recreation Center as a place of religious worship for a 200 member church. A true and correct copy of the COUNTY'S November 30, 1988 letter to the PARK is filed as Exhibit 1 to the instant Application. In addition, the COUNTY assigned a real property tax-payer identification numbers (741-203700 and 741-2037500) and Assessor's Parcel Number (APN #408-200-17-00) to the CHURCH and for the years 1993 to the present the COUNTY has sent yearly billing statements to the CHURCH. True and correct copies of the billing statements sent by the COUNTY to the CHURCH are filed collectively as Exhibit 2.

10. As it grew throughout the years, the CHURCH needed to acquire use of additional buildings at the Park. The buildings that comprise the CHURCH'S complex include: (a) the Main Sanctuary (i.e., the Recreation Center), (b) the Main Office Building, and (c) the Children's Classroom Building (hereinafter the Main Sanctuary, the Main Office Building, and the Children's Classroom Building shall be referred to collectively as the "CHURCH'S Complex").

11. Throughout the years the CHURCH paid for and maintained the CHURCH'S Complex and paid for and made improvements to the Park's property and the buildings in the CHURCH'S Complex, which include but are not limited to the following: (a) replaced the roofs on all 3 buildings in the CHURCH Complex; (b) installed and maintained air conditioning and heating units; (c) installed dry-wall in buildings; (d) installed lighting systems; (e) painted interiors and exteriors of buildings; (f) paved area surrounding CHURCH Complex;

(g) installed sound-proofing; (h) installed sound system; (i) installed new carpet and flooring; (j) enlarged existing bathroom; (k) installed new electrical system; (l) replaced doors (fire doors to meet code regulations); (m) updated kitchen (i.e., installed new cabinets and closets); (n) installed new water heater; (o) installed alarm system in all buildings; (p) erected a brick wall as a parking barrier; (q) repaired bathroom (behind office); (r) poured cement for a basketball court; (s) installed cement behind the Main Sanctuary for use by Children's Ministry and children living in the Park; and (t) installed new chairs for Sanctuary.

12. Prior to the CHURCH'S use of the Recreation Center as a place of religious assembly and worship, the Recreation Center was a restaurant, a grocery store, and a U.S. Post Office.

13. In addition to religious assemblies and worship services, the CHURCH Complex has been utilized for **non**-religious assemblies and purposes. For example, the CHURCH has provided the Community with the following accommodations, services, and programs: (a) assistance after the 2003 Cedar Fire: staging area for all of the help needed in the emergency situation (e.g., FEMA, Salvation Army, Forest Services, Various Fire Departments, etc.); (b) Voting/Polling Stations; (c) Alcoholics Anonymous; (d) Boy Scouts; (e) funerals; (f) Government Food Distribution Program; (g) Mountain Health Services; (h) Senior Lunch Program; (i) Town Meetings; (j) 4-H Clubs; (k) local Water Department Meetings; (l) Weddings; (m) Missions Outreach–ongoing help for school in Tanzania and ministries in Mexico; (n) Adopt-a-Highway Program; (o) host East County Ministers-Christmas Party (several times throughout the years); (p) Hallelujah Night - (alternative Halloween night); (q) Harvest Festival for the community; (r) fundraiser for Pro-Life Organizations; (s) Youth - 30

---

**DECLARATION OF PASTOR STAN PETERSON IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-4-

hour fast—Pro-life event; (t) Parents Loss Program; and (u) Alcoholics Anonymous—Freedom Ranch.

14.  After almost 25-years of uninterrupted and uneventful activity, on April 16, 2008, the COUNTY issued a Notice of Violation to the Park, which stated that the CHURCH'S use of the Recreation Center for religious assemblies and worship is illegal.  If the CHURCH continued its religious assemblies and worship, the 4/16/08 Notice of Violation also threatened to impose $2,500 per day in fines on the CHURCH. A true and correct copy of the COUNTY'S April 16, 2008 Notice of Violation is filed as Exhibit 3.

15.  The Park did not agree with the COUNTY'S assertions and the Park wanted the CHURCH'S religious activities in the CHURCH Complex to continue. The Park believed that the CHURCH'S activities in the CHURCH Complex and the Community were not only legally permissible but also of great worth and benefit to the Guatay Community. On May 1, 2008, the Park's legal counsel, Charles A. LePla of Hart, King & Coldren, sent the COUNTY a letter challenging the COUNTY'S conclusion that the CHURCH could not engage in religious assembly and speech and religious worship. A true and correct copy of Mr. LePla's May 1, 2008, letter is filed as Exhibit 4.

16.  On May 16, 2008, I learned from the Park's legal counsel, Charles LePla, that the COUNTY had ordered that the CHURCH cease and desist from engaging in any further religious assemblies or religious worship at the CHURCH Complex. The COUNTY contended that religious assemblies, religious worship, and religious institutions were not permitted by the COUNTY'S land use ordinances.

**17.** On May 23, 2008, the Park's owner and manager, John O'Flynn, sent a letter to all residents of the Park informing them of the COUNTY'S actions and requesting them to provide statements of support, which they did. A true and correct copy of Mr. Flynn's 5/23/08 letter is filed as Exhibit 5 and true and correct copies of letters in support submitted by Bobbi Brink, Chuck and Cheryl Rice, Warren and Ann Larkin, and Dr. Elise Larsen are filed collectively as Exhibit 19.

**18.** On May 30, 2008, the COUNTY sent a letter to the CHURCH (addressed to Reverend Peterson), which stated, in part, that: "*The building [the CHURCH is] in is currently approved for sale of beer and wine and to allow live music and entertainment.*" The letter also states that the continued operation of the CHURCH as a place of "*religious assembly*" is "*illegal*." Finally, the letter closed by threatening legal action against the CHURCH. A true and correct copy of the COUNTY'S 5/30/08 letter to the CHURCH is filed as Exhibit 6.

**19.** After receiving the May 30, 2008, letter the CHURCH Membership and I feared being prosecuted and sued by the COUNTY, and, therefore, ceased engaging in religious assembly and religious worship in the CHURCH Complex. Since the COUNTY'S threat of legal action, the CHURCH has ceased all religious assembly and religious worship activities. Shortly after receiving the COUNTY'S May 30, 2008, letter, I spoke with Deputy County Counsel, Eliot J. Alazraki, who confirmed the contents of his May 30, 2008, letter and also informed me that had the CHURCH not ceased engaging in religious assembly and religious worship in the CHURCH Complex he "*would have contacted San Diego Gas & Electric and instructed them to cut all electrical power to* [the CHURCH Complex]." The COUNTY would have taken such action without any hearing, court proceedings, court orders, or other due process.

**DECLARATION OF PASTOR STAN PETERSON IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-6-

**20.** The COUNTY'S actions of preventing the CHURCH from continuing its use of the CHURCH'S Complex has substantially burdened the CHURCH and its Members' exercise of their constitutional rights to free exercise of religion, freedom of speech, freedom of assembly, and freedom of association. The CHURCH suddenly had no place to hold its religious assemblies on Sunday mornings and Wednesday evenings. The CHURCH was forced to rely upon the Members to open-up their homes for services, although none was a size large enough to accommodate the entire Membership. Consequently, much of the Membership was not able to attend church at all because of the limited areas in the homes where services were held. The following examples are provided:

**1.** **Substantial Burdens on the Church**: (a) quality of sound system—the CHURCH'S large sound system utilized for musical worship could not be used in the homes; (b) no special live singing due to the absence of a sound system; (c) loss of financial support due to low attendance; (d) the CHURCH had to provide supplies in other homes (e.g., water); (e) the CHURCH had to store, transport, and arrange chairs every service; (f) the CHURCH had to supply a house cleaner (before and after services) to clean the house being used for services; (g) the CHURCH still had to maintain the parking lot, yard, etc. at the CHURCH Complex even though the CHURCH was not being used; (h) the CHURCH continued to pay for utilities (i.e., electricity, propane, phone, etc.) even though the CHURCH Complex was not being used; (i) the weekly services were not recorded (due to lack of equipment) for the CHURCH'S audio tape ministry; (j) no venue for musicians to practice; (k) prospective members were questioning the situation at the CHURCH created by the COUNTY; and (l) as the CHURCH Complex was empty, a graffiti problem started, which required resources to correct.

**2.** **<u>Substantial Burdens on the Membership:</u>** (a) many members are not able to attend; (b) families with children could not come—unlike the CHURCH Complex, there were no classrooms for the children; (c) psychological impact—probably the most traumatic impact was the Membership's complete astonishment that the COUNTY would set out to take such action against their religious institution—thus making them feel like lawbreakers for merely engaging in religious assemblies and worship services; (d) members with disabilities could not attend because some homes did not have the proper accommodations; (e) extra cost to drive to different locations (i.e., gas); (f) many members had no transportation to attend various locations; (g) bathrooms were inadequate; (h) inadequate parking—members were dropped-off and then the drivers had to search for parking; (i) disruption of members' homes; and (j) one member broke her arm at a home meeting site while coming up the step—afterwards she did not attend any more services.

21.  On Sunday, August 10, 2008, we held services in the CHURCH Complex for the first time since being threatened by the COUNTY in May of 2008. The CHURCH was filled with the happy return of the Members and it was a joyous time of celebration at Guatay Christian Fellowship.

22.  On August 15, 2008 the CHURCH was ordered by the COUNTY to cease holding assembly of any kind in the CHURCH. After the issuance of this letter the CHURCH ceased holding any religious assemblies or worship services. A true and correct copy of the COUNTY'S August 15, 2008, letter from County Counsel Alazraki to Lepiscopo, Esq. is filed as Exhibit 18.

23.  Other than August 10, 2008, services have not been held in the CHURCH since May 30, 2008.

**DECLARATION OF PASTOR STAN PETERSON IN <u>SUPPORT</u> OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-8-

**24.** Exhibit 31 was prepared by using a map from Google and WORD to create the names of the commercial and religious establishments surrounding the CHURCH. There are commercial establishments to the North, East, and West of the CHURCH directly on Old Highway 80 (e.g., the Garden Store, Hilltop Supply, Guatay Country Store, Dick's Towing, etc.). To the East of the CHURCH is a Jehovah's Witnesses Church, which is exactly ninety-one feet from the CHURCH'S East property line. A true and correct copy of the Map is filed as Exhibit 31.

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on this **28TH** day of **August**, 200**8**, at San Diego, California.

_____
**PASTOR  STAN PETERSON**

---

**DECLARATION OF PASTOR STAN PETERSON IN <u>SUPPORT</u> OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-10-

**CASE NAME:** *GUATAY CHRISTIAN FELLOWSHIP v. COUNTY OF SAN DIEGO*

**CASE NO.:** **08-CV-01406-JM-CAB**

## CERTIFICATE OF PERSONAL SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO:

I am over the age of eighteen years, and not party to this action. My business address is **2635 Camino del Rio South, Suite 109, San Diego, California 92108**.

I, the undersigned, declare under the penalty of perjury that I served the below name person(s) the following documents:

1. **DECLARATION OF PASTOR STAN PETERONS IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

in the following manner:

By **personal** service by delivery to **ABC ATTORNEY SERVICES, INC.** for personal service on **August 29, 2008** to the following person(s):

**THOMAS D. BUNTON, ESQ.**                **Attorneys for County of San Diego**
SENIOR DEPUTY COUNTY COUNSEL
County of San Diego
County Administration Center
1600 Pacific Highway, Room 355
San Diego, California 92101-2469

I certify and declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on this **29TH** day of **August, 2008**.

                                                                   /s/ Peter D. Lepiscopo
                                                                   Peter D. Lepiscopo, Esq.

---
**DECLARATION OF PASTOR STAN PETERSON IN SUPPORT OF GUATAY CHRISTIAN FELLOWSHIP'S MOTION FOR PRELIMINARY INJUNCTION**

-11-