# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUATAY CHRISTIAN FELLOWSHIP,<br><br>                                                 Plaintiff,<br>  vs.<br><br>COUNTY OF SAN DIEGO,<br><br>                                                Defendant. | CASE NO. 08cv1406 JM(CAB)<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

Plaintiff Guatay Christian Fellowship ("Plaintiff" or "Guatay") moves to preliminarily enjoin Defendant County of San Diego ("County") "from interfering with the Church and its members' exercise of their religious, speech, assembly and association rights." (Motion at p.2:16-17). County opposes the motion. For the reasons set forth below, the motion for a preliminary injunction is granted in part and denied in part:

    (1) County is hereby enjoined from enforcing its Cease and Desist Order.

    (2) Plaintiff may conduct religious activities at the site only upon remedying the eight most serious code violations identified in Plaintiff's Exhibit 18.

    (3) County is further ordered to allow and expeditiously process any permit required to remedy the violations identified in Plaintiff's Exhibits 18 and 33. With respect to the code violations not considered the "most serious violations," (Plaintiff's Exh. 18), Plaintiff shall remedy to the extent practicable the remaining violations identified in Plaintiff's Exhibit 33 within a reasonable time not to exceed a period of 90 days after

1   religious activities recommence on the site.

2   (4) Plaintiff is ordered to submit all applications required to seek a Master Use Permit
3   ("MUP") to permit religious use of the site within 30 days of remedying the violations
4   identified in Exhibits 18 and 33.

5   (5) The court denies the preliminary injunction to the extent Plaintiff seeks to compel
6   County to issue a MUP modifying the zoning for the site without Plaintiff applying for
7   and receiving a MUP to allow religious activities on the site.  Plaintiff must complete
8   all required applications to obtain a MUP, as required of all applicants seeking a MUP.

## BACKGROUND

Commencing in October 1986 Guatay has held religious services at the recreation center of the Pine Valley Trailer Park (the "Park") located in Guatay, California. Plaintiff rents the space from the Park.  During this time, membership in Guatay has fluctuated between 50 to 100 members. (Peterson Decl. ¶¶4, 5).

Over the years, Guatay expanded and improved the church property by replacing roofs on the three buildings that comprise the facilities, installing heating and air conditioning systems, updating bathrooms and kitchen, and paving portions the grounds.  (Peterson Decl. ¶11).  In November 1988 the County informed Guatay that the existing wells and reservoir are adequate for the "use of the recreation building for a 200 person church."  (Plaintiff's Exh. 1; Peterson Decl. ¶9).  The property has also been used as a staging area after the 2003 Cedar Fire, as a polling station, and to provide a meeting space for various organizations such as Alcoholics Anonymous, Boy Scouts, and other events. (Peterson Decl. ¶13).

The land where the recreation center is located is zoned rural residential under the County's zoning ordinance.  Under the zoning ordinance, property that is not residential or agricultural requires a MUP for other uses to the property. For example, in 1982 the County granted the owner of the RV park a modification to the existing use permit to convert the recreation center into a place where beer and wine could be sold and live entertainment featured.  (Peterson Decl. ¶¶12, 14).

On April 16, 2008 the County sent a Notice of Violation to the Park indicating that the controlling MUP permitted the recreational hall to be used for the sale of beer and wine and live

1  entertainment. (Plaintiff's Exh. 3). The Notice of Violation also indicated that the use of the facilities
2  as a church required "a modification of the MUP . . . Religious assembly is not allowed in an RR-1
3  Zone without an MUP. Id. The Park did not agree that a MUP was required. On May 16, 2008 the
4  County issued a Cease and Desist order prohibiting Guatay from engaging in any further religious
5  assemblies or worship at the site. (Peterson Decl. ¶15).

6  In response to the Cease and Desist order, many congregants sent letters of support to the
7  County. The County responded to the letters on May 30, 2008 indicating that religious assembly is
8  not permitted on the site. When Pastor Peterson spoke with Deputy County Counsel Alazraki he was
9  informed that had Guatay not ceased operations he would have instructed San Diego Gas and Electric
10 to cut all electrical power to the complex. (Peterson Decl. ¶19). On May 30, 2008 Guatay ceased all
11 religious assembly at the site.

12 On August 13, 2008 the court conducted a hearing on Plaintiff's motion for a temporary
13 restraining order to prevent the County from proceeding with an inspection of the site. The court
14 permitted the County to proceed with its inspection. Following an inspection of the property, the
15 County discovered 67 code violations, (Plaintiff's Exh. 33), and identified eight violations as "the
16 most serious." (Plaintiff's Exh. 18). According to Plaintiff's experts, the identified code violations
17 are relatively minor. (Howse Decl.,Seuss Decl., and Giese Decl.)

18 Plaintiff now moves to enjoin County from interfering with its members' exercise of their
19 religious, speech, assembly, and associational rights under the First Amendment and the Religious
20 Land Use and institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc. County
21 opposes the motion.

**DISCUSSION**

23 The court first addresses the motion for preliminary injunctive relief as applied to the Cease
24 and Desist Order and then as applied to RLUIPA and the MUP application process.

**Legal Standards**

26 "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the
27 merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance
28 of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural

1 Resources Defense Council, Inc., - -S.Ct.- -, 2008 WL 4862464 (Nov. 12, 2008). Preliminary injunctive relief is available if the party meets one of two tests: (1) a combination of probable success and the possibility of irreparable harm, or (2) the party raises serious questions and the balance of hardship tips in its favor. Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. Under both formulations, however, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." Id.

**The Motion for Preliminary Injunction**

Irreparable Harm

The court concludes that Plaintiff has demonstrated significant irreparable harm arising from the Cease and Desist Order issued by County. Guatay and its members have demonstrated substantial burden on the church arising from the loss of its site to conduct religious related activities: services are held at members' homes resulting in the burden of transporting supplies and chairs for every service; there is no adequate sound system for the services; financial support has diminished on account of low attendance; Guatay continues to incur expenses to maintain the site even though the site is not presently in use; and graffiti has been scrawled on the site because of the lack of use of the facilities. (Peterson Decl. ¶20). Members of the congregation have also been burdened: no classrooms are available for the children; many members are not able to attend services at other members' homes; members with disabilities are unable to attend as many of the homes lack appropriate accommodations; some members lack transportation to homes where services are conducted; parking is inadequate at the homes where services are conducted; and the psychological impact caused by the loss of the facilities. Id. Where, like here, the loss of First Amendment rights are implicated, even for minimal periods of time, such a loss "unquestionably constitutes irreparable harm." Elrod v. Burns, 427 U.S. 347, 373 (1976).

County does not present any opposition to the evidence submitted by Plaintiff to establish irreparable harm.

In sum, the court concludes that Plaintiff has demonstrated substantial hardship and injury

1  such that Plaintiff need only demonstrate a fair chance of success on the merits to satisfy the legal
2  standard for the issuance of a preliminary injunction.

3  <u>Estoppel</u>

4  Plaintiff argues that principles of estoppel preclude County from, in essence, issuing the Cease
5  and Desist Order. The court does not apply this doctrine to the MUP because, as set forth in the
6  following section, the issue is not yet ripe. The principle of estoppel

> prohibits a governmental entity from exercising its regulatory power to prohibit a proposed land use when a developer incurs substantial expense in reasonable and good faith reliance on some governmental act or omission so that it would be highly inequitable to deprive the developer of the right to complete the development as proposed.

<u>Toiga v. Town of Ross</u>, 70 Cal.App.4th 309, 321 (1998). Here, Guatay has occupied the site for 22 years before issuance of the Cease and Desist Order. During this time, Guatay made substantial improvements to the recreation center in order to conduct its religious activities on the site. During this time the County acknowledged, as early as 1988 that a religious facility operated on the site. (Plaintiff's Exh. 1; Peterson Decl. ¶9). The County informed Guatay that the existing wells and reservoir are adequate for the "use of the recreation building for a 200 person church." <u>Id.</u> Further, Plaintiff received and paid tax bills in its name from County in which Guatay was exempted from the payment of property taxes, presumably because of its church status, (Plaintiff's Exh. 2), and County, in July 2000, issued permits for an electrical upgrade at the facility, noting on the building permit that the upgrade pertained to an "existing church." (Plaintiff's Exh. 43).

While estoppel in the land use context applies only under extraordinary circumstances, <u>id.</u>, equitable principles clearly favor Plaintiff. To effectively deprive a group of individuals from practicing their religious beliefs at a site in continuous use for over 20 years, presents extraordinary circumstances warranting application of the equitable estoppel doctrine.

In sum, the court concludes that Guatay has demonstrated a fair chance of prevailing under the estoppel argument.

<u>Public Interest</u>

The public interest overwhelmingly weighs in favor of Plaintiff. Congress has determined that the balance of equities and public interest should weigh in favor of the free exercise of religion and

1  that this balance should only be disrupted when the government is able to prove, by specific evidence,
2  that its interests are compelling and its burdening of religious freedom is as limited as possible. See
3  42 U.S.C. §2000bb-1(a)-(b).  These interests, identified in RLUIPA, stress that RLUIPA is to be
4  "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by
5  the terms of this chapter and the Constitution." 42 U.S.C. §2000cc-3(g). In light of the overwhelming
6  public interest that citizens are broadly entitled to engage in religious freedoms and activities, as
7  embodied in RLUIPA and the First Amendment, this factor favors enjoining County from enforcing
8  the Cease and Desist Order.

9  The only countervailing public interest identified by County is a generalized one. Both in its
10  papers and at the time of oral argument County argued that the public has an interest "with respect to
11  zoning interests or concerns." (RT at 35:21-212). Under the particular circumstances of this case, this
12  argument constitutes a thin reed upon which the interests of County are to be balanced.

13  In sum, Plaintiff has demonstrated that it is entitled to preliminary injunctive relief to enjoin
14  County from enforcing the Cease and Desist Order.

15  **The RLUIPA Claim**

16  Plaintiff brings claims for violation of RLUIPA and its rights to free speech, freedom of
17  assembly, freedom of religion and equal protection. The court does not presently address the RLUIPA
18  claim because the claim is not ripe. In Williamson County Regional Planning Commission v.
19  Hamilton Bank, 473 U.S. 172 (1985), the Supreme Court held that "a claim that the application of
20  government regulations effects a taking of a property interest is not ripe until the government entity
21  charged with implementing the regulation has reached a final decision regarding the application of the
22  regulation to the property at issue." Id. at 186. Such a claim is not ripe if "the property owners [have]
23  not yet submitted a plan for development of their property." Id. at 187. Here, Plaintiff has never
24  applied for either a MUP or a zoning change for the property. Until Plaintiff makes such an
25  application it is unknown whether Plaintiff will obtain such relief.

26  Ripeness applies to claims under RLUIPA as well. According to the Joint Statement of
27  Senator Hatch and Senator Kennedy on the Religious Land Use and Institutionalized Persons Act of
28  2000:

> This Act does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay.

146 Cong. Rec. S.7774-1. Further, in <u>San Jose Christian College v. City of Morgan Hill</u>, 360 F.3d 1024 (9th Cir. 2004) the Ninth Circuit held that RLUIPA does not excuse or eliminate the requirement that religious institutions are exempt from applying for changes to zoning regulations. In <u>Christian College</u>, the college failed to comply with all the application requirements in order to modify property zoning from hospital use to college/religious use. The college then commenced an action against the city arguing that the city's zoning policies violated the First Amendment and RLUIPA. The Ninth Circuit held that the "ordinance imposes no restriction whatsoever on College's religious exercise: it merely requires College to submit a complete application, as is required of all applicants. Should College comply with this request, it is not at all apparent that its re-zoning application will be denied." <u>Id.</u> at 1035.

Here, Plaintiff's failure to seek either re-zoning for the site or a MUP fails to establish a case or controversy as Plaintiff may very well obtain the relief it requests.

In sum, the court grants in part and denies in part Plaintiff's motion for preliminary injunction:

(1) County is hereby enjoined from enforcing its Cease and Desist Order.

(2) Plaintiff may conduct religious activities at the site only upon remedying the eight most serious code violations identified in Plaintiff's Exhibit 18.

(3) County is further ordered to allow and expeditiously process any permit required to remedy the violations identified in Plaintiff's Exhibits 18 and 33. With respect to the code violations not considered the "most serious violations," (Plaintiff's Exh. 18), Plaintiff shall remedy to the extent practicable the remaining violations identified in Plaintiff's Exhibit 33 within a reasonable time not to exceed a period of 90 days after religious activities recommence on the site.

(4) Plaintiff is ordered to submit all applications required to seek a Master Use Permit ("MUP") to permit religious use of the site within 30 days of remedying the violations identified in Exhibits 18 and 33.

(5) The court denies the preliminary injunction to the extent Plaintiff seeks to compel

County to issue a MUP modifying the zoning for the site without Plaintiff first applying for and receiving a MUP to allow religious activities on the site. Plaintiff must complete all required applications to obtain a MUP, as required of all applicants seeking a MUP.

**IT IS SO ORDERED.**

DATED: November 18, 2008

Hon. Jeffrey T. Miller
United States District Judge

cc:    All parties